CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 05, 2024

LAURA A. AUSTIN, CLERK
BY:
            s/A. Beeson
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **LEO BRANDON FARNSWORTH,** | ) | |
| Plaintiff, | ) | Civil Action No. 7:21-cv-00463 |
| | ) | |
| **v.** | ) | |
| | ) | By: Michael F. Urbanski |
| **RALPH S. NORTHAM, et al.,** | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Leo Brandon Farnsworth, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Ralph Northam, the former Governor of Virginia; Brian Moran, the former Secretary of Public Safety; Harold Clarke, the former Director of the Virginia Department of Corrections ("VDOC"); and Melvin Davis, the former Warden of Green Rock Correctional Center ("Green Rock"). Farnsworth claims that the defendants violated his federal and state constitutional rights by suspending Christian worship services during the COVID-19 pandemic.[1]

The defendants have moved to dismiss Farnsworth's third amended complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). ECF No. 57. In response to the defendants' motion to dismiss, Farnsworth filed a motion to quash the defendants' motion, ECF No. 60; a motion to strike the defendants' motion, ECF No. 64; and a motion to clarify the complaint, ECF No. 61. The court will grant the motion to clarify to the extent that the court will consider the allegations set forth therein in evaluating whether Farnsworth has stated

---

[1] This case was severed from another case filed by Farnsworth, Civil Action No. 7:20-cv-00264, after Farnsworth filed an amended complaint that added claims challenging the suspension of worship services at Green Rock. See Order, ECF No. 1-1.

a claim upon which relief could be granted. For the reasons set forth below, the court concludes that Farnworth has failed to state a viable constitutional claim under § 1983 against any of the defendants. Consequently, the defendants' motion to dismiss will be granted as to Farnsworth's § 1983 claims, and Farnsworth's motions to strike and quash the defendants' motion will be denied. Additionally, the court will decline to exercise supplemental jurisdiction over any claims asserted under state law.

## I.   Background

Farnworth's third amended complaint attempts to set forth four sets of claims. The first set is asserted against former Governor Northam. Farnsworth alleges that on or about March 12, 2020, Northam signed an Executive Order "limiting the number of people gathering in Virginia during an Emergency Lockdown."[2] Mot. to Clarify, ECF No. 61, at 2. Farnsworth, who is a Protestant Christian, asserts that the Executive Order resulted in the denial of "religious services based upon a number of attendees at the church." Id. at 4. He claims that the Executive Order violated his "right to assemble and to practice his faith without due process afforded," in violation of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the Constitution of Virginia. 3d Am. Compl., ECF No. 55, at 2–3. Farnsworth further asserts that he was deprived of equal protection in violation of the

---

[2] Farnsworth specifically refers to Executive Order No. 51, which declared a state of emergency in the Commonwealth of Virginia due to the potential spread of COVID-19. See Lighthouse Fellowship Church v. Northam, 20 F.4th 157, 160 (4th Cir. 2021) (discussing Executive Order No. 51). "The declaration of emergency authorized the Governor to issue executive orders to manage the emergency." Id. (citing Va. Code § 44-146.17). The Governor subsequently issued additional Executive Orders that imposed various restrictions on public and private gatherings. Id. Executive Order No. 53, which took effect on March 23, 2020, "placed a 10-person cap on all public and private gatherings and closed most businesses and non-business entities." Id. Although Executive Order No. 53 exempted several categories of entities from its restrictions, including law enforcement agencies, churches were not granted an exemption. Id.; see also Executive Order No. 53, available at https://www.bluebook.virginia.gov/.

Fourteenth Amendment because Muslim inmates were allowed to practice their religious beliefs in spite of the Executive Order. Id. at 4.

Farnsworth's second set of claims is asserted against Brian Moran. He alleges that Moran "remained in the loop of denying religious service[s] based on a magical number" and that he "spoke during [a] news conference approving Defendant Northam's illegal Executive Order." Mot. to Clarify at 4. Farnsworth claims that Moran violated his "right to assemble and practice his faith without due process afforded while Muslims and Islamic inmates practice[d] theirs." 3d Am. Compl. at 4.

In his third set of claims, Farnsworth alleges that Harold Clarke "enforced a state Executive Order that violated the 1st and 14th Amendments of the [United States Constitution]," as well as the Constitution of Virginia. 3d Am. Compl. at 5. Farnsworth asserts that Clarke relied on the Executive Order to suspend religious services but that "Muslim and Nation of Islam meetings/observed holidays were allowed" at Green Rock while Melvin Davis was the Warden. Mot. to Clarify at 5.

Farnsworth's fourth set of claims is asserted against Davis. Farnsworth alleges that Davis "took immediate action" following the issuance of the Executive Order and "closed all meetings at Green Rock" on March 14, 2020. Id. at 2. He alleges that "no special Easter meal" or "Easter service" was offered on April 12, 2020, but that "Muslims had Ramadan May 6, 2020 . . . which lasted a month." Id. at 2–3. He further alleges that the "Green Rock Christian Church at Green Rock Correctional Center was closed" and that "no chaplain/inmate conducted services were allowed for the remainder of the year Farnsworth was residing at

Green Rock."[3] Id. at 3. Farnsworth claims that Davis violated his "right to assemble and practice his faith without due process afforded while Muslims and Islamic inmates practice[d] theirs." 3d Am. Compl. at 5.

In his request for relief, Farnsworth states that he "want[s] declaratory judgment and compensatory relief due to being transferred in retaliation over [the] lawsuit filed." Id. at 3. He asserts that he is "being housed in a mental health unit [at Greensville Correctional Center] without cause." Id.; see also Mot. to Clarify at 3 (asserting that his "transfer to Greensville Mental Health Unit was added punishment by Harold W. Clarke, due to the filing of the complaint").

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertions devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and brackets omitted).

---

[3] Farnsworth indicates that he was transferred to another facility on or about April 27, 2021. Mot. to Clarify at 3. By letter dated November 21, 2021, Farnsworth advised the court that he was no longer incarcerated at Green Rock and that he had been moved to Greensville Correctional Center. ECF No. 9.

When a complaint is filed by a plaintiff proceeding pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

### III.    Discussion

#### A.    Claims under § 1983

Farnsworth filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Loftus v. Bobzien, 848 F.3d 278, 284-85 (4th Cir. 2017) (internal quotation marks omitted). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff's rights." Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017). Having reviewed the third amended complaint in accordance with applicable law, the court concludes that Farnsworth has failed to plead facts sufficient to establish that any of the defendants violated his federal constitutional rights.

### 1.  Free Exercise and Freedom of Assembly Claims

The court will first address Farnsworth's claims against the defendants for alleged violations of his rights to assemble and freely exercise his religion.

The First Amendment, made applicable to the States through the Fourteenth Amendment, prohibits States from making any law "prohibiting the free exercise" of religion or "abridging . . . the right of the people peaceably to assemble." U.S. Const. amend I. "While '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution,' . . . they do severely curtail those protections." Desper v. Clarke, 1 F.4th 236, 242 (4th Cir. 2021) (first alteration in original) (quoting Turner v. Safley, 482 U.S. 78, 84 (1987)). The Supreme Court has explained that "[t]he very object of imprisonment is confinement" and that "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered." Overton v. Bazzetta, 539 U.S. 126, 131 (2003). Consequently, "[a]n inmate does not retain rights inconsistent with proper incarceration," id., and "even those rights that do survive incarceration are afforded less protection by the Constitution than the rights of free citizens," Desper, 1 F.4th at 242. "As the Supreme Court held in Turner, 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Id. at 242–43 (quoting Turner, 482 U.S. at 89)).

In Turner, the Supreme Court identified four factors that courts may consider in assessing the validity of a prison policy or regulation that impinges upon constitutional rights:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates" . . . ; (3) what impact the desired accommodation would have on

security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

Lovelace v. Lee, 472 F.3d 174, 200 (4th Cir. 2006) (first and third alterations in original) (quoting Turner, 482 at 89-92). "Among these factors, the first is the most important." Al-Owhali v. Holder, 687 F.3d 1236, 1240 (10th Cir. 2012); see also Nasir v. Morgan, 350 F.3d 366, 372 (3d Cir. 2003) ("The first, and most important, prong of the Turner analysis requires a rational connection between the prison regulation in question and the legitimate governmental interest which justifies it."). When ruling on a motion to dismiss, a court must "assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest." Al-Owhali, 687 F.3d at 1240.

Is assessing whether a regulation or restriction is reasonable under Turner, courts "must accord substantial deference to the professional judgment of prison administrators." Overton, 539 U.S. at 132. "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Id. Because the plaintiff bears that burden, he must allege sufficient facts to plausibly show that the regulation or decision at issue "lacked a rational relation to legitimate penological interests." Desper, 1 F.4th at 244; see also Al-Owhali, 687 F.3d at 1240 ("Taken together, Iqbal and Turner require an inmate to plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.") (internal quotation marks omitted).

Additionally, "[i]n order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere

religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018). "A practice or policy places a substantial burden on a person's religious exercise when it 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Id. (brackets omitted) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)).

Applying these principles, the court concludes that Farnsworth's allegations fail to satisfy the pleading requirements applicable to his claims for alleged violations of his rights to assemble and freely exercise his religion. First, with respect to his free exercise claims, Farnsworth has not carried his initial burden of pleading sufficient factual matter to establish that any defendant imposed a substantial burden on his ability to exercise his religion. Although he seeks to hold the defendants responsible for the suspension of Christian worship services at Green Rock, he does not explain how the inability to attend worship services significantly burdened his ability to practice his religion. Likewise, to the extent Farnsworth complains of not being served a special meal for Easter, he does not describe what that meal should have included to accommodate his religious beliefs or otherwise provide any indication of how the failure to serve a special meal imposed a substantial burden on his religious exercise.

Even if Farnsworth's allegations regarding the suspension of worship services were sufficient to establish a substantial burden, his First Amendment claims arising from the suspension of such services would still fail because he has not met his burden under Turner. As explained above, Farnsworth "must allege sufficient facts showing that [the suspension of worship services] was not reasonably related to a legitimate penological interest." Jehovah v.

Clarke, 798 F.3d 169, 181 (4th Cir. 2015) (citing Turner, 482 U.S. at 89). Farnsworth's allegations fail to satisfy this requirement.

It is clear from the pleadings that the restrictions at issue bore a "rational connection [to] a legitimate penological interest," as required to satisfy the first and most important prong of the Turner analysis. Id. at 178. Farnsworth acknowledges that former Governor Northam's Executive Order placed restrictions on in-person gatherings due to an "emergency"—namely the public health crisis caused by the COVID-19 pandemic. Mot. to Clarify at 2. And he alleges that worship services were suspended following the issuance of the Executive Order. As other courts have recognized, "there is a valid, rational connection between a policy suspending religious gatherings during a pandemic and the legitimate governmental interest of protecting the health and safety of inmates, guards and others at the prison." Bradshaw v. Dahlstrom, No. 3:20-cv-00292, 2023 WL 3072322, at *5 (D. Alaska Apr. 25, 2023) (footnote omitted); see also Broughton v. Geo Grp., Inc., No. 1:20-cv-00938, 2023 WL 4394103, at *9 (E.D. Va. July 6, 2023) ("Here, there is a rational connection between the religious services being cancelled to . . . protect the health of inmates and staff at the beginning of the COVID-19 pandemic when little was known about COVID-19."); Hammock v. Watts, No. 1:22-cv-0482, 2023 WL 2457242, at *7 (D. Md. Mar. 10, 2023) ("Here, to the extent that Hammock's claim relates to the failure to conduct any group Jumah services during the COVID-19 pandemic, such a restriction was plainly reasonably related to the legitimate penological interests of protecting the health and safety of inmates and correctional staff by preventing an outbreak of COVID-19 within the facility.").

Other factors, to the extent that they are applicable at this stage of the proceedings, also support the conclusion that the challenged restrictions were reasonable under Turner. The second Turner factor asks whether prison inmates have "alternative means of exercising" their First Amendment rights. Turner, 482 U.S. at 90. In the context of religious exercise, "[t]he relevant inquiry . . . is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, [courts] are to determine whether the inmates have been denied all means of religious expression." Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 351–52 (1987)). In other words, courts consider "whether, more broadly, the prison affords the inmates opportunities to exercise their faith." Firewalker-Fields v. Lee, 58 F.4th 104, 117 (4th Cir. 2023) (quoting Baranowski v. Hart, 486 F.3d 112, 121 (5th Cir. 2007)). Here, Farnsworth does not allege that any of the defendants deprived him of all means of associating or communicating with other Christians, or all means of worshipping God. To the contrary, Farnsworth acknowledges in response to the defendants' motion that Christian inmates still had access to a chaplain during the pandemic, even if it was limited to telephone "ministering." Pl.'s Aff. Supp. M. Quash, ECF No. 60-1, at 6; see also Overton, 539 U.S. at 135 (concluding that the options of communicating with persons outside a prison by letter and telephone provided sufficient alternatives where noncontact visitation was not permitted, and noting that alternatives "need not be ideal," but instead "need only be available"); Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 983 (8th Cir. 2004) (concluding that there were sufficient alternative means for an inmate to practice his faith "without group worship," since he could "worship in other ways," such as by praying, occasionally meeting with clergy, and communicating with

fellow believers through permitted inmate interactions); Chau v. Young, No. 3:13-cv-00764, 2014 WL 4100635, at *5 (N.D. Cal. Aug. 20, 2014) (noting that the denial of access to group religious services did not deprive an inmate of all means of exercising his religious beliefs, since he "remained able to worship alone in his cell and had access, upon request, to an Islamic services [chaplain] to discuss spiritual matters").

Additionally, Farnsworth does not allege facts from which the court could reasonably infer that accommodating his preferred form of worship and association with other Christians would have had an insignificant impact on prison staff, other inmates, and the allocation of prison resources. During the time period at issue, the defendants were faced with the difficult task of protecting inmates, prison staff, and the public from the COVID-19 virus, while also fulfilling other responsibilities associated with "the 'inordinately difficult undertaking' that is modern prison administration.'" Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) (quoting Turner, 482 U.S. at 85). In normal times, courts are required to give "substantial deference to prison officials" when considering the impact that accommodation of an asserted right will have on guards, inmates, and resource allocation. Firewalker-Fields, 58 F.4th at 115. "In attempting to prevent and stem COVID-19 outbreaks, prison officials are plainly entitled to that substantial deference." Carolina v. Feder, No. 3:20-cv-00658, 2021 WL 268854, at *8 (D. Conn. Jan. 26, 2021); see also Bradshaw, 2023 WL 3072322, at *5 (noting, in dismissing a similar claim, that accommodating an inmate's request for religious gatherings during the COVID-19 pandemic would have had a "substantial impact" on guards, other inmates, and prison resource allocation).

Finally, Farnsworth has not identified any alternative solutions that are "so easy and so obvious" that they suggest that the suspension of worship services was not reasonably related to a legitimate penological interest. <u>Firewalker-Fields</u>, 58 F. 4th at 120. In response to the defendants' motion to dismiss, Farnsworth asserts that "[t]he gym was not in use at Green Rock" and that "[t]here could have been a remote church service where inmates could have been in their cells watching the service that was in the gym." Pl.'s Aff. Supp. M. Quash at 6. At the same time, however, Farnsworth alleges that he did not have a television in his cell at Green Rock. <u>Id.</u> at 5.0  And he does not plausibly suggest that providing inmates the opportunity to watch a church service remotely from their cells would have been an "easy, obvious, and low-cost" solution. <u>Firewalker-Fields</u>, 58 F.4th at 119; <u>see also</u> <u>id.</u> ("Providing Firewalker-Fields with an individual tablet or television for viewing Friday prayer might not have involved a huge expenditure of resources, but in the aggregate, scheduling a system for the whole prison to lend out tablets aligned with each prisoner's desired prayer time would no doubt add at least some administrative burden.").

For these reasons, the court concludes that Farnsworth has failed to plausibly allege that the suspension of worship services during the pandemic was not reasonably related to a legitimate penological interest. Accordingly, his claims for denial of his First Amendment rights to assemble and freely exercise his religion must be dismissed.

### 2. Due Process Claims

Farnsworth also claims that the defendants violated his right to due process by suspending worship services. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due

process of law." U.S. Const. amend. XIV, § 1. In order to prevail on a due process claim, a plaintiff must first demonstrate that he was deprived of a protected interest by some form of state action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). "Unless there has been a deprivation by state action, the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to due process is simply not implicated." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (internal quotation marks omitted); see also Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal due process claim.") (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579 (1972)).

Farnsworth asserts that the suspension of worship services deprived him of a protected liberty interest. See Mot. to Clarify at 2 ("Farnsworth's home address is prison and at no time was he punished by a Circuit Court Judge, after his August 1, 2012, bank robbery conviction to denial of religious practices."). The Supreme Court has held that "[a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). For the reasons explained below, Farnsworth has failed to demonstrate that the defendants' actions deprived him of a protected liberty interest.

"With respect to interests arising directly under the Due Process Clause, the Supreme Court has narrowly circumscribed its scope to protect no more than . . . 'the most basic liberty interests in prisoners.'" Arce v. Walker, 139 F.3d 329, 332 (2d Cir. 1998) (quoting Hewitt v.

Helms, 459 U.S. 460, 467 (1983)). "Prison officials are given broad administrative discretion in the management of the confinement of inmates, and no liberty interest is implicated so long as the 'conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and does not otherwise violate the Constitution . . . .'" O'Bar v. Pinion, 953 F.2d 74, 83 (4th Cir. 1991) (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976)). The Fourth Circuit has explained that "changes in a prisoner['s] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate are contemplated by his original sentence to prison [and] are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and effectively." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Measured against this backdrop, the court concludes that the suspension of worship services during the pandemic did not implicate a protected liberty interest under the Due Process Clause itself. See Lee v. Gurney, No. 3:08-cv-00099, 2010 WL 5113782, at *6 (E.D. Va. Dec. 9, 2010) (concluding that "the Due Process Clause itself did not provide Plaintiff with a liberty interest in continuing to conduct his Salat on the recreation yards with other Sunni Muslim inmates").

Farnsworth has also failed to plausibly allege that he had a state-created liberty interest in continuing to attend Christian worship services during the pandemic. Demonstrating the existence of a state-created liberty interest requires a "two-part" showing. Prieto v. Clarke, 780 F.3d 245, 249 (4th Cir. 2015) (internal quotation marks omitted). An inmate in Virginia must "point to a Virginia law or policy providing him with an expectation of avoiding the conditions of his confinement and demonstrate that those conditions are harsh and atypical in relation to

14

the ordinary incidents of prison life." Id. at 252. "Satisfying these requirements is a difficult task, and intentionally so." Desper, 1 F.4th at 247.

Farnsworth has not pointed to any state law or policy that creates a liberty interest in attending worship services while incarcerated. See Olim v. Wakinekona, 461 U.S. 238, 249 (1983) (explaining that "a  State creates a protected liberty interest by placing substantive limitations on official discretion" and that "[a]n inmate must show that particularized standards or criteria guide the State's decisionmakers") (internal quotation marks omitted); Stewart v. Bailey, 7 F.3d 384, 392 (4th Cir. 1993) ("State statutes and rules generally establish liberty and property interests to the extent they prescribe substantive rules of decision: the regulation must create substantive predicates to guide the decisionmaker's discretion, such as specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.") (internal quotation marks omitted). Nor has Farnsworth alleged facts from which the court could reasonably infer that the suspension of worship services during the pandemic posed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Beverati, 120 F.3d at 504 (concluding that placement in administrative segregation for six months with no access to religious or educational services was not so atypical as to implicate a liberty interest); Kravitz v. Annucci, No. 16-cv-8999, 2019 WL 1429546, at *8 (S.D.N.Y. Mar. 29, 2019) (noting that the "deprivation of access to communal religious services has been held not to rise to a level of atypical and significant hardship") (internal quotation marks omitted) (collecting cases); Stemple v. Shearin, No. 1:14-cv01739, 2015 WL 461861, at *13 (D. Md. Feb. 3, 2015) (concluding that an inmate's suspension from congregate

15

worship opportunities did not impose an atypical and significant hardship); <u>Lee</u>, 2010 WL 5113782, at *6 (concluding that "the denial of the ability to engage in group Salat is not an atypical and significant hardship") (internal quotation marks omitted).

In the absence of a protected liberty interest, Farnsworth has no viable claim for violation of his right to due process. Consequently, the due process claims asserted against the defendants must be dismissed.

### 3. Equal Protection Claims

Farnsworth alleges that "[o]nly Muslim and Nation of Islam meetings/observed holidays were allowed at Green Rock Correctional Center" after Northam issued his Executive Orders. Mot. to Clarify at 5. He claims that the defendants violated the Fourteenth Amendment by affording Muslim inmates the opportunity to "practice their [religion]" during the same time period that Christian worship services were suspended. 3d Am. Compl. at 4–5.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is 'essentially a direction that all persons similarly situated should be treated alike.'" <u>Grimm v. Gloucester Cnty. Sch. Bd.</u>, 972 F.3d 586, 606 (4th Cir. 2020) (quoting <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." <u>Hartmann v. Cal. Dep't of Corr. & Rehab.</u>, 707 F.3d 1114, 1123 (9th Cir. 2013) (citing <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n.2 (1972)). To establish a violation of the Equal Protection Clause, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated <u>and</u> that the unequal treatment was the result of discriminatory

animus." Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011) (emphasis added). Farnsworth has not set forth sufficient factual allegations to satisfy either element.[4]

With respect to the first element, Farnsworth has not provided enough factual content to enable the court to reasonably infer that the populations of Christian and Muslim inmates at Green Rock were similarly situated or "in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). For instance, while Farnsworth alleges that Muslim inmates were still allowed to have meetings and observe holidays during the pandemic, he offers no indication as to the number of Muslim inmates allowed to meet or whether the Muslim holidays involved services comparable in size to the Christian worship services that were suspended. See Ofori v. Fleming, No. 7:20-cv-00344, 2022 WL 3584904, at *10 (W.D. Va. Aug. 22, 2022) (concluding that the plaintiff "failed to plausibly allege an equal protection violation based on different religions allegedly being treated differently" since he provided "no information about whether the other groups have the same or similar number of inmates" or "meet in the same facilities or facilities with the same inmate capacity").

Additionally, with respect to the second element, Farnsworth has not plausibly alleged that any difference in treatment "was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." Maye v. Klee, 915 F.3d 1076, 1085 (6th Cir. 2019). In particular,

---

[4] The court also notes that Farnsworth's pleadings do not explain how all four defendants were personally involved in the differential treatment of which he complains. See Wilcox, 877 F.3d at 170 (explaining that liability under § 1983 "will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights") (internal quotation marks omitted).

a plaintiff must allege facts sufficient to show that the defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Wilson v. United States, 332 F.R.D. 505, 525 (S.D.W. Va. 2019) (internal quotation marks omitted). Thus, in this context, "discriminatory intent 'implies more than intent as volition or intent as awareness of consequences." Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 819 n.2 (4th Cir. 1995) (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)). The plaintiff must show that the defendants "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Id. (internal quotation marks omitted).

Farnsworth has failed to plead facts sufficient to show that any unequal treatment was the result of intentional or purposeful discrimination. None of the allegations in his pleadings plausibly suggest that the defendants acted with an intent to discriminate against him or other Christian inmates because of their particular religious beliefs. See Burke v. Clarke, 842 F. App'x 828, 838 (4th Cir. 2021) (affirming the dismissal of an equal protection claim where the plaintiff's allegations failed to establish that the VDOC applied a policy with discriminatory intent against Rastafarians); Fluker v. King, 679 F. App'x 325, 329 (5th Cir. 2017) (concluding that prison officials were properly granted summary judgment on an equal protection claim since the plaintiff did "not point[] to any evidence indicating that [the defendants'] motivation for treating him differently was invidious religious discrimination"). Consequently, Farnsworth has failed to state a cognizable claim for violation of the Equal Protection Clause.

4.    **Retaliation**

In his request for relief, Farnsworth seeks to recover damages on the basis that he was transferred to another VDOC facility in retaliation for filing this action. To the extent that Farnsworth asserts a separate claim for retaliation in violation of the First Amendment, he has not alleged enough facts to state a plausible claim for relief against any of the named defendants.

As an initial matter, Farnsworth does not allege facts sufficient to show that any of the named defendants, particularly Northam and Moran, were personally involved in the decision to move him to another facility. It is well settled that government officials cannot be held liable under § 1983 merely because they hold supervisory positions. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Additionally, Farnsworth does not plausibly allege that there was a causal relationship between the filing of this action and his subsequent transfer to another facility. See Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) ("In order to state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.") (internal quotation marks and brackets omitted). Farnsworth filed the initial pleading challenging the suspension of worship services on August 4, 2020, in Farnsworth v. Davis, No. 7:20-cv-00264, and he alleges that he was transferred to another facility on or about April 27, 2021, more than eight months later. Farnsworth does not allege that anything

occurred that would suggest that the transfer was causally connected to the filing of civil rights claims against the defendants, and "the significant passage of time between the two actually tends to negate an inference of retaliation." Ullrich v. CEXEC, Inc., 709 F. App'x 750, 754 (4th Cir. 2017) (holding that a lag of more than five months between an adverse employment decision and the filing of a charge of discrimination was sufficient to negate any inference of retaliation); see also Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."). While Farnsworth may believe that this lawsuit played a role in his transfer, an "inmate must allege more than his personal belief that he is the victim of retaliation." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). Accordingly, the court concludes that the retaliation claim asserted in Farnsworth's prayer for relief must be dismissed.

## B.  Claims under State Law

In light of the dismissal of the federal claims, the court declines to exercise jurisdiction over any claims under state law and will dismiss those claims without prejudice. See 28 U.S.C. § 1367(c)(3) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); see also Ryu v. Whitten, 684 F. App'x 308, 311-12 (4th Cir. 2017) ("[B]ecause we affirm the grant of summary judgment on all of Ryu's federal claims, no reason exists to exercise supplemental jurisdiction over his pendant state law claims; rather they should be dismissed without prejudice.").

## IV.  Conclusion

For the reasons set forth herein, Farnsworth's motion to clarify his third amended complaint, ECF No. 61, is **GRANTED**. However, because the pleading, as clarified, fails to

state a claim for relief under § 1983, the defendants' motion to dismiss, ECF No. 57, is

**GRANTED** with respect to the federal claims, and Farnsworth's motions to strike and quash

the defendants' motion, ECF No. 60 and 64, are **DENIED**. The court **DISMISSES** any

remaining claims under state law without prejudice. An appropriate order will be entered.

Entered: March 5, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.03.05 15:07:33
-05'00'

Michael F. Urbanski
Chief United States District Judge